UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFIAK MOHAMED ALGZALY, et al., | Case No. 20-cv-03322-JCS |
| Plaintiffs, | **ORDER REGARDING MOTION TO DISMISS AND MOTION FOR LEAVE TO AMEND** |
| v. | |
| MICHAEL R. POMPEO, et al., | Re: Dkt. Nos. 18, 26 |
| Defendants. | |

## I.      INTRODUCTION

Plaintiff Rafiak Mohamed Algzaly is a naturalized American citizen who sponsored his sons, Plaintiffs Hani Rafeq Mohammed Alghazali and Gubran Rafeq Mohammed Alghazali, for immigration visas.  Hani and Gubran's[1] applications were denied, purportedly based on consular officials' determinations that Hani and Gubran used khat (a stimulant), that they misrepresented medical information, and that Gubran practiced polygamy.  Plaintiffs—Rafiak, Hani, Gubran, and several other members of their family, some of whom also sought visas through Hani and Gubran's applications—assert claims for violation of the Immigration and Nationality Act ("INA"), the Administrative Procedures Act ("APA"), and their due process rights under the Fifth Amendment against a number of United States government officials and agencies.  Defendants move to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiffs move for leave to file an amended complaint under Rule 15(a)(2).  The Court previously found these motions suitable for resolution without oral argument.

For the reasons discussed below, Defendants' motion is GRANTED as to Plaintiffs' claim under the APA, which is DISMISSED with prejudice, but DENIED as moot as to the remaining

---

[1] Because several plaintiffs share the same last name, this order refers to all plaintiffs by their first names for clarity and convenience.  No disrespect is intended.

claims.  Plaintiffs' motion for leave to amend is GRANTED except as to the APA claim, and

Plaintiffs shall file an amended complaint no later than February 5, 2021.[2]

## II.      BACKGROUND

### A.      Allegations of the Complaint

In or around 1996, when Rafiak was a lawful permanent resident of the United States, he

filed two I-130 Petitions for Alien Relative, one for Hani and one for Gubran, which were

approved.  Compl. (dkt. 1) ¶¶ 57–59.[3]  Hani and Gubran are Yemeni nationals who resided in

Yemen at the time, and their cases were sent to the U.S. embassy in Sana'a for further processing.

*See id.* ¶ 61.  Hani and Gubran attended an interview at the embassy "sometime before October

2015," but were denied visas based on their alleged use of khat,[4] a substance that is legal in

Yemen, even though they had not actually used it.  *Id.* ¶¶ 66–67, 69.  Hani and Gubran were

referred to a doctor selected by the embassy for periodic testing over three years to prove they

were not using khat, which they did, resulting in negative tests indicating they were not using khat.

*Id.* ¶¶ 69–71; *see also id.* ¶¶ 96–98 (asserting that the use of khat is not a valid reason to refuse a

visa application).  The doctor to whom they were referred was later removed from the embassy's

panel for submitting fraudulent medical reports, and they were sent to a second doctor.  *Id.* ¶ 72.

According to Plaintiffs, this testing was part of a widespread fraudulent scheme involving

kickbacks from doctors to embassy staff, which was only one form of rampant corruption at the

Sana'a embassy.  *Id.* ¶¶ 73–74, 96, 98, 101–07.

In March of 2016, after the Sana'a embassy had closed due to unrest in Yemen, Gubran

and his wife and children were interviewed at the U.S. embassy in Cairo, but received a refusal

letter stating that Gubran had misrepresented his medical status.  *Id.* ¶ 75.  The embassy did not

respond to multiple requests for clarification from Plaintiffs' previous counsel.  *Id.* ¶¶ 76–77.

---

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all
purposes pursuant to 28 U.S.C. § 636(c).
[3] Because the allegations of a complaint are generally taken as true for the purpose of a motion
under Rule 12(b)(6), this order summarizes Plaintiffs' allegations as if true.  Nothing in this order
should be construed as resolving any issue of fact that might be disputed at a later stage of the
case.
[4] The word "khat" can also be spelled "qat"; the spelling varies in the record of this case.

United States District Court
Northern District of California

Hani attended an interview at the Cairo embassy in May of 2016, and received a letter instructing him to provide a photograph of his father and an I-601 Application for Waiver of Grounds of Inadmissibility. *Id.* ¶ 78.  Hani provided both, even though Plaintiffs contend he was not inadmissible and thus should not have been required to provide an I-601 application. *Id.* ¶¶ 79–82.

At the time Plaintiffs filed this action, Hani and Gubran's applications were listed as "Refused" on the Department of State's website. *Id.* ¶ 87.

Plaintiffs assert the following claims: (1) violation of the APA, *id.* ¶¶ 125–42; (2) a claim for declaratory judgment that Defendants violated the INA and other unspecific federal laws and regulations, *id.* ¶¶ 143–50; (3) violation of the INA, *id.* ¶¶ 151–59; (4) violation of Plaintiffs' right to substantive due process under the Fifth Amendment, *id.* ¶¶ 160–69; (5) violation of Plaintiffs' right to procedural due process under the Fifth Amendment, *id.* ¶¶ 170–81; and (6) a claim for attorneys' fees and costs under the Equal Access to Justice Act, *id.* ¶¶ 182–83.  Plaintiffs seek, among other relief, an order requiring Defendants to "revoke the improper refusal of Plaintiffs' immigrant visa applications" and "fully and properly adjudicate the immigrant visa applications within 30 days." *Id.* at 41 (Prayer for Relief).

## B.   Declaration of Maria Rosales

Defendants filed with their motion to dismiss a declaration of Maria Rosales, an attorney advisor at the State Department, based on her review of State Department records. *See generally* Rosales Decl. re MTD (dkt. 18-1).  According to Rosales, State Department records indicate that Hani and Gubran appeared for interviews at the Sana'a embassy and applied for immigrant visas in April of 2008, but a consular officer refused their applications under 8 U.S.C. § 1182(a)(1)(A)(iv) based on substance-related disorders. *Id.* ¶¶ 6–7.  Rosales states that Hani and Gubran again appeared for consular interviews in 2012, but their applications were refused under the same section for substance disorders, and also under 8 U.S.C. §1182(a)(6)(C)(i) based on material misrepresentations. *Id.* ¶¶ 8–9.  Rosales states that a consular officer determined that Hani and Gubran had successfully complete khat remission and scheduled a new interview in 2014, but again refused their applications under §1182(a)(6)(C)(i) based on material

misrepresentations. *Id.* ¶ 10. According to Rosales, records indicate that a consular officer refused Hani's wife's visa application in May of 2016 because it was derivative of Hani's application and he had not established eligibility, and consular officers refused Gubran's application in March of 2016 under §1182(a)(6)(C)(i) based on material misrepresentations and again in January of 2018 under 8 U.S.C. § 1182(a)(10)(A) because the officer determined that Gubran practiced polygamy. *Id.* ¶¶ 11–14.

Defendants assert that Rosales's declaration is subject to judicial notice in the context of a Rule 12(b)(6) motion to dismiss "[a]s an administrative record" and because Plaintiffs' complaint relies on the consular officers' decisions. Mot. to Dismiss ("MTD," dkt. 18) at 1 n.2. Had Plaintiffs objected, the Court would likely decline to take judicial notice of a declaration purporting to summarize documents not in the record, the accuracy of which cannot be verified in the context of a 12(b)(6) motion. But Plaintiffs did not object, *see generally* Opp'n to MTD (dkt. 27), and regardless, Rosales's declaration does not affect the outcome of the present motions.

### C.    Arguments Regarding Defendants' Motion to Dismiss

Defendants contend that all of Plaintiffs' claims are subject to dismissal based on the doctrine of consular non-reviewability, which provides that, generally, "'a consular officer's decision to issue or withhold a visa is not subject either to administrative or judicial review.'" MTD at 8–9 (quoting *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986)). Defendants argue that Plaintiffs' complaint omits "undisputed facts that control their claims"— specifically, the consular officers' 2014 and 2018 determinations that Hani was ineligible under § 1182(a)(6)(C)(i) based on material misrepresentations and that Gubran was ineligible under § 1182(a)(10)(A) for practicing polygamy. *Id.* at 10–11. According to Defendants, the consular officers' identification of specific statutory grounds for ineligibility meets their burden and precludes judicial review. *Id.* at 11, 13. While Defendants acknowledge that courts have recognized a limited avenue for highly deferential review where a visa denial implicates the constitutional rights of a sponsoring citizen, they argue that such review should not extend to the parent-child relationship here, and regardless, the consular officers' decisions would survive such review. *Id.* at 12–16 (citing, *e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018); *Kerry v. Din*,

United States District Court
Northern District of California

1  576 U.S. 86, 103–04 (2015) (Kennedy, J., concurring[5])).  Defendants also argue that Ninth Circuit

2  precedent forecloses Plaintiffs' APA claim.  *Id.* at 11–12 (citing *Allen v. Milas*, 896 F.3d 1094,

3  1108 (9th Cir. 2018)).

4        According to Plaintiffs, the "facially legitimate and bona fide standard" for review of

5  consular visa decisions under *Din* and similar cases "necessarily requires some facts in the

6  uncontested record that establish inadmissibility," and some courts have recognized further

7  grounds for review where, for example, an applicant presented evidence of innocence that a

8  consular officer refused to consider.  Opp'n to MTD at 5–7.  Plaintiffs also note that the Ninth

9  Circuit has recognized an exception to the doctrine of consular non-reviewability where a plaintiff

10  shows bad faith by a consular officer, including where a plaintiff "'allege[s] that the consular

11  official did not in good faith believe the information he had.'"  *Id.* at 7 (quoting *Bustamante v.*

12  *Mukasey*, 531 F.3d 1059, 1062–63 (9th Cir. 2008)).  Plaintiffs contend that Defendants lacked a

13  facially legitimate and bona fide reason to deny Hani and Gubran's visa applications because the

14  material misrepresentation statute grants such broad discretion to consular officers that mere

15  citation to it is not sufficient, because any misrepresentation in medical records was by embassy-

16  selected doctors without Hani or Gubran's knowledge, and because Plaintiffs have alleged that the

17  consular officers acted in bad faith as part of a pattern of corruption.  *Id.* at 8–12.  Plaintiffs also

18  argue that Rafiak has a cognizable Fifth Amendment right to due process in the adjudication of the

19  visa applications he sponsored for Hani and Gubran.  *Id.* at 12–15.  Finally, Plaintiffs concede that

20  this Court is bound by Ninth Circuit precedent, but argue that the Ninth Circuit's conclusion in

21  *Allen*—that the APA provides no avenue to review consular denials of visa applications—is

22  contrary to the legislative intent of the APA.  *Id.* at 15–19.

23        Defendants contend in their reply that the consular officers' citation to statutory grounds

24  for ineligibility is sufficient to shield their decisions from review, courts have declined to extend

25

26  _____

27  [5] No opinion in *Din* attracted support from a majority of the Court.  The parties here agree that
Justice Kennedy's opinion controls, and the Ninth Circuit has so held.  *See Allen v. Milas*, 896
F.3d 1094, 1108 (9th Cir. 2018) ("But Justice Kennedy, joined by Justice Alito, concurred in the

28  judgment alone, in the narrowest and thus controlling opinion in that case.").  All citations herein
to that case therefore refer to Justice Kennedy's opinion, without further parentheticals.

*Din*'s recognition of at least a potential constitutional interest by a citizen in a visa application for a spouse to other familial relationships including siblings and children, and Plaintiffs have not alleged bad faith with particularity.  *See generally* Reply re MTD (dkt. 32).

### D.    Arguments Regarding Plaintiffs' Motion for Leave to Amend

Plaintiffs seek leave to file an amended complaint addressing the 2018 denial of Gubran's visa application based on his purported polygamy, of which Plaintiffs initially contended they were unaware until Defendants filed their motion to dismiss.  *See* Mot. to Amend (dkt. 26) at 3. Plaintiffs argue that Defendants failed to inform Gubran of that basis for denial, that the evidence on which the consular officer relied—indicating that Gubran married for a second time, without evidence that his first marriage had ended—does not show that Gubran intended to maintain marital relations with multiple wives while in the United States, as required for denial based on polygamy under § 1182(a)(10)(A), and that only Gubran's first marriage was valid.  *Id.* at 4–7. Plaintiffs therefore contend that the polygamy statute does not provide a "facially legitimate and bona fide" reason for denial, as required for Defendants to invoke the doctrine of consular non-reviewability.  *Id.* at 7.  Plaintiffs argue that their motion for leave was not unduly delayed because they filed it in response to new information disclosed in Defendants' motion to dismiss, that Defendants will not be prejudiced by amendment, that Plaintiffs have not acted in bad faith, and that amendment would not be futile.  *Id.* at 9–11.

Defendants argue primarily that leave to amend should be denied based on futility, because both material misrepresentations under § 1182(a)(6)(C)(i) and polygamy under § 1182(a)(10)(A) bar Gubran from obtaining a visa and Gubran was informed of those grounds for denial, and because the doctrine of consular non-reviewability applies to shield those determinations from review.  Opp'n to Amendment (dkt. 28) at 9–12.  Defendants also briefly argue that leave to amend should be denied as untimely because Plaintiffs learned in 2018 that Gubran's application was denied based on polygamy.  *Id.* at 12.

For their assertion that Gubran had notice of the denial based on polygamy, Defendants rely on a declaration by Rosales attaching an email chain.  The first email in the chain was sent on February 4, 2018 from "baligh alghazali" to the Cairo embassy visa unit, reading as follows:

United States District Court
Northern District of California

> Mr Consul
> good greeting
>
> I want to inform you that I did not understand the rejection paper I
> received from the Aramex
> Please help me with some clarifications
> What should I do to continue my case?
>
> section 212 (a)(10)(A) practicing polygamis [sic]
> I want to inform you that my case has exceeded 18 years
> Please tell me what I should to do and thank you
>
> Please help me
> Thank you and have a nice day
> To contact us: [contact information, with no name included]

*See* Rosales Decl. re Amendment (dkt. 28-1).

The only other email in the chain is a February 5, 2018 response from the Cairo embassy visa unit to the same email address for "baligh alghazali" reading as follows:

> Mr. Al Ghazali,
>
> Thank you for your email. In response to your question, please be advised that on further review the consular officer determined that you are ineligible for this immigrant visa due to 212(A)(10)(A) of the Immigration and Naturalization Act.
>
> There is no waiver for this ineligibility, therefore your immigrant visa application is denied.
>
> Best regards,
>
> Immigrant Visa Unit
> U.S. Embassy Cairo

*Id.*

Defendants offer no explanation for the discrepancy between Gubran's name and the name included in these emails. Plaintiffs' complaint alleges that Baligh Alghazali is Gubran and Hani's brother, who initially received a "similar fraudulent refusal notice for his visa," but later had his visa approved and is now in the United States. Compl. ¶ 16. In their reply, however, Plaintiffs appear to concede that the emails involved Gubran, stating that "Defendants most recent submission of evidence establishes [that] Plaintiff Gubran was also confused by the finding of inadmissibility under § 1182(a)(10)(A)," and arguing that the omission was based on a good faith mistake because Gubran, in his confusion, failed to communicate that basis for denial to Plaintiffs'

7

1  counsel.  Reply re Amendment (dkt. 31) at 6–8.

2      Plaintiffs argue in their reply that their motion for leave to amend was not unduly delayed,

3  Defendants face no prejudice from allowing leave to amend, and amendment is not futile because,

4  in Plaintiffs' view, Defendants lacked a facially legitimate and bona fide reason to deny Hani and

5  Gubran's visa applications based on any of the statutory provisions cited.  *See generally id.*

6  **III.    ANALYSIS**

7      **A.    Legal Standard for Amendment Under Rule 15(a)(2)**

8      In general, when a party seeks to amend a pleading more than twenty-one days after

9  serving it, or more than twenty-one days after service of a responsive pleading or motion, the party

10  must obtain either the opposing party's consent or leave of the court. Fed. R. Civ. P. 15(a).  The

11  Federal Rules of Civil Procedure provide that "courts should freely give leave when justice so

12  requires." *Id.*  "Courts may decline to grant leave to amend only if there is strong evidence of

13  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

14  deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

15  of allowance of the amendment, [or] futility of amendment, etc.'"  *Sonoma Cty. Ass'n of Retired*

16  *Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S.

17  178, 182 (1962)) (alteration in original).  Of those factors, "prejudice to the opposing party carries

18  the most weight."  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020).

19  "Requests for leave to amend should be granted with 'extreme liberality.'"  *Id.* (citation omitted).

20      **B.    Legal Standard for Dismissal Under Rule 12(b)(6)**

21      A complaint may be dismissed for failure to state a claim on which relief can be granted

22  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss

23  under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*

24  *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a claimant's burden at the pleading stage

25  is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

26  sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

27  that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

28      In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of

United States District Court
Northern District of California

material fact as true and construe[s] them in the light most favorable to the non-moving party."
*Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a
lack of a cognizable legal theory or on the absence of facts that would support a valid theory.
*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A pleading must "contain
either direct or inferential allegations respecting all the material elements necessary to sustain
recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)
(citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading
that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action
will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).
"[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"
*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a
complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*,
556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on its
face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting
*Twombly*, 550 U.S. at 570).

### C.    Judicial Review of Consular Decisions Denying Visas

Courts have "have long recognized that 'ordinarily, a consular official's decision to deny a
visa to a foreigner is not subject to judicial review' . . . based on 'the recognition that the power to
exclude or expel aliens, as a matter affecting international relations and national security, is vested
in the Executive and Legislative branches of government.'"  *Allen v. Milas,* 896 F.3d 1094, 1104
(9th Cir. 2018) (citations omitted).  In *Kleindienst v. Mandel*, 408 U.S. 753 (1972), the Supreme
Court "recognized a narrow exception for review of constitutional claims," but "[t]he exception
itself is quite narrow, requiring deference to the consular officer's decision so long as 'that reason
was facially legitimate and bona fide.'"  *Allen*, 896 F.3d at 1105 (quoting *Mandel*, 408 U.S. at
769).  If the consular officer presents a facially legitimate and bona fide reason for denial, "the
courts will neither look behind the exercise of that discretion, nor test it by balancing its
justification against" the constitutional interests at issue.  *Mandel*, 408 U.S. at 770.  To trigger

9

1   even that deferential standard of review, "the denial of a visa [must] implicate[] the constitutional

2   rights of American citizens." *See Cardenas v. United States*, 826 F.3d 1164, 1169 (9th Cir. 2016)

3   (citation and internal quotation marks omitted).

4        Several decisions by the Supreme Court and courts of appeals have addressed the scope of

5   that exception.  In *Din*, Justice Kennedy's controlling opinion held that where a statute cited by

6   the consular officer "specifies discrete factual predicates the consular officer must find to exist

7   before denying a visa," rather than granting "nearly unbridled discretion," a plaintiff can obtain

8   review only through "an affirmative showing of bad faith on the part of the consular officer,"

9   which the plaintiff in that case failed to show.  *Din*, 576 U.S. at 105; *see also Hawaii*, 138 S. Ct. at

10  2419 ("In *Din*, Justice KENNEDY reiterated that 'respect for the political branches' broad power

11  over the creation and administration of the immigration system' meant that the Government need

12  provide only a statutory citation to explain a visa denial.").

13       In *Cardenas*, the Ninth Circuit entertained a claim by the wife of an applicant whose visa

14  was rejected on account of purported gang membership, but affirmed dismissal because the

15  consular officer gave a facially legitimate reason by citing a statute prohibiting entry with intent to

16  engage in unlawful activity and identifying the applicant's purported connection to a criminal

17  gang as the basis for that decision.  *See* 826 F.3d at 1172–73.  The court construed *Din* as

18  endorsing a two-part test: "First, the consular officer must deny the visa under a valid statute of

19  inadmissibility. . . . Second, the consular officer must cite an admissibility statute that 'specifies

20  discrete factual predicates the consular officer must find to exist before denying a visa,' or there

21  must be a fact in the record that 'provides at least a facial connection to' the statutory ground of

22  inadmissibility."  *Id.* at 1172 (quoting *Din*, 56 U.S. at 105).  The *Cardenas* court also held that the

23  plaintiff failed to present allegations raising a plausible inference of bad faith.  *Id.* at 1172–73.

24       The Ninth Circuit's pre-*Din* decision in *Bustamante v. Mukasey* suggested that bad faith

25  could be established by allegations "that the consular official did not in good faith believe the

26  information he had," but not merely by alleging "that the consular official's information was

27  incorrect."  *Bustamante*, 531 F.3d 1059, 1062–63 (9th Cir. 2008).  The Seventh Circuit has

28  suggested that a consular officer's decision might fail the "facially legitimate and bona fide

United States District Court
Northern District of California

reason" test if "if the consular official had concluded that the [evidence of ineligibility was] false, or if [the plaintiff] had presented strong evidence of innocence that the consular officer refused to consider"—facts not present in the case before that court. *Morfin v. Tillerson*, 851 F.3d 710, 713–14 (7th Cir. 2017). A more recent Seventh Circuit decision held that "[m]aking an 'affirmative showing of bad faith' requires a plaintiff to point to something more than an unfavorable decision." *Yafai v. Pompeo*, 912 F.3d 1018, 1022 (7th Cir. 2019).[6]

### D.   Plaintiffs' APA Claim Fails

In *Allen*, the Ninth Circuit engaged in a thorough analysis of the APA and the doctrine of consular non-reviewability, ultimately concluding "that the APA provides no avenue for review of a consular officer's adjudication of a visa on the merits." 896 F.3d at 1108. Plaintiffs seek to distinguish that decision because they contend that their claims meet the more demanding standard of showing no "facially legitimate and bona fide" reason for denial, which courts have recognized as cognizable under *Mandel*. *See* Opp'n to MTD at 15–16. But *Allen*'s holding is clear that the APA does not apply to consular decisions denying visas, and that court treated *Mandel*'s exception for limited review of constitutional violations as a distinct form of claim from the APA. *See Allen*, 896 F.3d at 1108–09. This Court is not free to deviate from the Ninth Circuit's holding.

Plaintiffs also argue that *Allen* was wrongly decided, but acknowledge that this Court is bound by it. *See* Opp'n to MTD at 15–19. The Court understands that portion of Plaintiffs' brief as preserving an argument for appeal. *See id.* at 16 ("[A]t a minimum Plaintiffs are required to raise this issue before the district court.").

Because "the APA provides no avenue for review of a consular officer's adjudication of a visa on the merits," *Allen*, 896 F.3d at 1108, Plaintiffs' claim under that statute for such review is

---

[6] Plaintiffs here also cite the Second Circuit's decision in *American Academy of Religion v. Napolitano*, which remanded for further inquiry where there was "no way of knowing whether the officer correctly applied [a clause of the ineligibility statute at issue], and hence the proffered reason for the denial has not yet been shown to conform to the relevant statute and to be facially legitimate." 573 F.3d 115, 132 (2d Cir. 2009). That decision was based on specific circumstances of a clause finding aliens ineligible based on support for a terrorist organization *unless* an alien demonstrates lack of knowledge that the organization engaged in terrorism, implying a right of the alien to rebut the consular officer's conclusion. *See id.* at 131–32. The statutes at issue here do not have a comparable structure, and broad inquiry as to whether a consular officer's decision was correct is not otherwise consistent with the standard of *Mandel* and *Din*.

11

1   subject to dismissal, and amendment of that claim would be futile.  Defendants' motion is

2   therefore GRANTED as to Plaintiffs' claim under the APA, which is DISMISSED with prejudice.

3   Plaintiffs' motion for leave to amend is DENIED as to that claim.

4          **E.**    **Leave to Amend Is Warranted as to Plaintiffs' Remaining Claims**

5           Plaintiffs' remaining claims might or might not be sufficient as currently alleged, but are

6   not so obviously barred by binding precedent.  Taking into account the "extreme liberality" with

7   which leave to amend must be granted, as well as the lack of any showing of prejudice to

8   Defendants—the factor that "carries the most weight" in this analysis—such leave is appropriate

9   here.  *See Brown*, 953 F.3d at 574.  Even if Gubran should have known to address the denial based

10  on alleged polygamy at the outset of the case, "[r]efusing, solely because of delay, to permit an

11  amendment to a pleading in order to state a potentially valid claim would hinder [the goal of

12  vindicating potentially meritorious claims] while not promoting any other sound judicial policy."

13  *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973).  The Court also notes that although

14  Plaintiffs sought to amend too late to amend by right under the letter of Rule 15(a)(1), which

15  would have allowed amendment by right within "21 days after service of a motion under Rule

16  12(b)," a request for leave to amend filed on the deadline to oppose the motion—which was

17  extended here by stipulation—is consistent with the spirit of the rule to allow a plaintiff one

18  chance to amend by right in lieu of opposing a motion to dismiss.  *See* Fed. R. Civ. P. 15(a)(1)(B).

19          Those factors do not weigh so heavily to require leave for amendment that would plainly

20  be futile, as with Plaintiffs' APA claim discussed above.  But while Plaintiffs' remaining claims

21  also implicate the doctrine of consular non-reviewability, Plaintiffs could perhaps satisfy the

22  *Mandel* exception for limited review of visa decisions in the context of constitutional claims.

23          The first step in the *Mandel* analysis is whether a U.S. citizen has a constitutional right

24  implicated by the decision.  *See Cardenas*, 826 F.3d at 1169.  Defendants contend that a parent's

25  relationship with an adult child is not cognizable in this context, and at least one district court has

26  so held in the context of a U.S. citizen plaintiff challenging her parents' visa denials.  *See Santos v.*

27  *Lynch*, No. 1:15-CV-00979-SAB, 2016 WL 3549366, at *4 (E.D. Cal. June 29, 2016) (holding

28  that there was "there [was] no process due to [the plaintiff] under the United States Constitution"

United States District Court
Northern District of California

because she did "not have a liberty interest as an adult child to live in the United States with her parents," and thus the court did "not need to conduct any further review of the reasons for the consular official's denials"). *Santos* relied on Justice Scalia's plurality opinion in *Din*, which rejected a wife's liberty interest in her husband's visa application, *see id.* at *3, but the Ninth Circuit has held that Justice Kennedy's opinion from *Din*, not justice Scalia's, controls, *Cardenas*, 826 F.3d at 1171–72. The Ninth Circuit recognized a citizen's liberty interest in a spouse's visa application before *Din* was decided in *Bustamante*, 531 F.3d at 1062, Justice Kennedy's decision in *Din* expressly declined to decide the issue, *see Din*, 576 U.S. at 102, and the Ninth Circuit has since analyzed a spouse's *Mandel* claim without questioning the sufficiency of her interest, *see Cardenas*, 826 F.3d at 1172. The Court therefore concludes that *Bustamante* remains controlling precedent on this issue.

That a citizen has a cognizable liberty interest in their *spouse*'s visa application does not answer the question of whether a *parent* has such an interest in an adult child's application. The Court is aware of no binding precedent on that question, and if Defendants are correct that there is no such interest, that would likely require dismissal. But that novel question of law is not a clear basis to deny leave to amend as futile, particularly when further exploration of Plaintiffs' claims through amendment might lead to more straightforward grounds for dismissal if Plaintiffs cannot satisfy the other elements of the *Mandel* test, which have been more thoroughly explored by the Supreme Court and Ninth Circuit.

Assuming that Rafiak has a sufficient interest in Hani and Gubran's applications to proceed to the *Mandel* test, the consular officers' invocation of 8 U.S.C. §1182(a)(6)(C)(i) and 8 U.S.C. § 1182(a)(10)(A) likely satisfies the standard of a facially valid reason for denial. Under the *Cardenas* court's interpretation of *Din*, the first element of that test is that a consular officer "must deny the visa under a valid statute of inadmissibility," and the second element is that the officer must *either* "cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' *or* there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." *Cardenas*, 826 F.3d at 1172 (emphasis added; citation omitted).

13

United States District Court
Northern District of California

1    Plaintiffs do not dispute that the inadmissibility statutes at issue are facially "valid."

2    Instead, they focus on whether those provisions specify discrete factual predicates and whether

3    there are facts in the record connected to them.  Under § 1182(a)(6)(C)(i), "[a]ny alien who, by

4    fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has

5    procured) a visa, other documentation, or admission into the United States or other benefit

6    provided under this chapter is inadmissible."  Under § 1182(a)(10)(A), "[a]ny immigrant who is

7    coming to the United States to practice polygamy is inadmissible."  It is not clear that the factual

8    predicates for those statutes are any less "discrete" than § 1182(a)(3)(B), which excludes aliens

9    who fall into any of a number of categories connected to terrorism, and citation of which Justice

10   Kennedy found sufficient to meet the consular officer's burden in *Din*, 576 U.S. at 105.  While

11   Justice Kennedy went on to identify facts in the record supporting the conclusion that the statute

12   applied, Ninth Circuit precedent interpreting *Din* does not require that further step.  Under

13   *Cardenas*, it is enough for the consular officer to cite a statute with a discrete factual prejudice *or*

14   for facts in the record to provide a facial connection; the government need not establish both of

15   those criteria.  *See* 826 F.3d at 1172.

16   While Defendants are likely correct that the consular officers' reasons for denial were

17   facially sufficient, that does not end the inquiry, because Plaintiffs could still prevail by plausibly

18   alleging the consular officers' bad faith.  *See Din*, 576 U.S. at 105.  Plaintiffs' complaint includes

19   some allegations of bad faith in the early stages of Hani and Gubran's applications at the Sana'a

20   embassy, where Plaintiffs allege corruption both specifically related to the khat remission testing

21   program and at the embassy more generally.  Assuming for the sake of argument Defendants are

22   correct that those allegations lack sufficient particularity, it is not clear that Plaintiffs could not

23   amend to include sufficient allegations, or to include clearer allegations of bad faith with respect to

24   the denial of Gubran's visa for alleged polygamy.  The Court therefore cannot say with certainty

25   that amendment would be futile.

26   Plaintiffs' motion for leave to amend is GRANTED as to all claims except their claim

27   under the APA.  Plaintiffs shall file an amended complaint no later than February 5, 2021.  In the

28   interest of efficiency, and perhaps avoiding another motion to dismiss or the need to grant further

leave to amend in the future, Plaintiffs are not required to file the proposed amended complaint attached to their motion, but may instead file a new amended complaint including all allegations Plaintiffs believe relevant in light of the parties' arguments and this order.

Because the current complaint will be superseded by the amended complaint, Defendants' motion to dismiss is DENIED as moot, except as to the APA claim.

## IV.   CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is GRANTED as to Plaintiff's claim under the APA, which is DISMISSED with prejudice.  Plaintiff's motion for leave to amend is DENIED as to that claim.  With respect to all other claims, Defendant's motion to dismiss is DENIED as moot, and Plaintiff's motion for leave to amend is GRANTED. Plaintiffs shall file an amended complaint no later than February 5, 2021.

**IT IS SO ORDERED.**

Dated: January 19, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge