UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFIAK MOHAMED ALGZALY, et al., | Case No.  20-cv-03322-JCS |
| Plaintiffs, | **ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| v. | |
| ANTONY BLINKEN, et al., | |
| Defendants. | Re: Dkt. Nos. 42, 47 |

## I.    INTRODUCTION

Plaintiff Rafiak Mohamed Algzaly is a naturalized American citizen who sponsored his sons, Plaintiffs Hani Rafeq Mohammed Alghazali and Gubran Rafeq Mohammed Alghazali, for immigration visas.  Hani and Gubran's[1] applications were denied, purportedly based on consular officials' determinations that Hani and Gubran used khat (a stimulant), that they misrepresented medical information, and that Gubran intended to practice polygamy in the United States. Plaintiffs—Rafiak, Hani, Gubran, and several other members of their family, some of whom also sought visas through Hani and Gubran's applications—assert that the consular officers' decisions denying their applications were not facially valid and bona fide but instead were made in bad faith, and that the denials violated Rafiak's Fifth Amendment due process rights.  Defendants are various senior government officials and agencies.

The Court previously granted Defendants' motion to dismiss Plaintiffs' claim under the Administrative Procedures Act ("APA") with prejudice, but granted Plaintiffs' motion for leave to amend their other claims and did not reach Defendants' arguments for dismissal except as to the APA claim.  Plaintiffs have since filed an amended complaint, Defendants move once again to

---

[1] Because several plaintiffs share the same last name, this order refers to all plaintiffs by their first names for clarity and convenience.  No disrespect is intended.

dismiss, and Plaintiffs move for leave to file a new APA claim based on decisions purportedly made by U.S. Citizenship and Immigration Services ("USCIS") rather than by the Department of State. The Court held a hearing on June 11, 2021. For the reasons discussed below, Defendants' motion is GRANTED, Plaintiffs' motion is DENIED, and the case is DISMISSED with prejudice.[2]

## II.     BACKGROUND

### A.     Procedural History

Plaintiffs filed this action on May 15, 2020. Compl. (dkt. 1). Defendants moved to dismiss, and Plaintiffs moved for leave to file an amended complaint after the time to amend by right under Rule 15(a)(1) of the Federal Rules of Civil Procedure had expired. On January 19, 2021, the Court dismissed Plaintiffs' claim under the APA with prejudice, but granted Plaintiffs leave to amend their remaining claims because although the doctrine of consular non-reviewability presented a potential barrier to those claims, Plaintiffs might be able to allege an exception to that doctrine based on bad faith. Order re Mot. to Dismiss & Mot. for Leave to Amend ("Jan. Order," dkt. 35).[3] The Court did not require Plaintiffs to file the proposed amended complaint included with their motion for leave, but instead encouraged Plaintiffs to "file a new amended complaint including all allegations Plaintiffs believe relevant in light of the parties' arguments and [the Court's] order." *Id.* at 15.

Plaintiffs filed their amended complaint on February 8, 2021. Am. Compl. ("FAC," dkt. 39). Defendants moved again to dismiss on March 9, 2021. Mot. to Dismiss FAC ("MTD," dkt. 42). On May 5, 2021, Plaintiffs moved for leave to file a second amended complaint asserting a new APA claim, based on a new attorney's theory that Plaintiffs can challenge inadmissibility decisions by USCIS without implicating the doctrine of consular non-reviewability. Mot. for

---

[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

[3] *Algzaly v. Pompeo*, No. 20-cv-03322-JCS, 2021 WL 175875 (N.D. Cal. Jan. 19, 2021). Citations herein to this previous order refer to page numbers of the version filed in the Court's ECF docket. Since the issuance of that order, Antony Blinken has replaced Michael Pompeo as Secretary of State, and thus is automatically substituted as the defendant named in the caption. *See* Fed. R. Civ. P. 25(d).

Leave (dkt. 47).

## B. Allegations of the Complaint

In or around 1996, when Rafiak was a lawful permanent resident of the United States, he filed two I-130 Petitions for Alien Relative, one for Hani and one for Gubran, which were approved. FAC ¶¶ 12–14, 64.[4] Hani and Gubran are Yemeni nationals who resided in Yemen at the time, and their cases were sent to the U.S. embassy in Sana'a for further processing. *See id.* ¶¶ 13, 15. Hani and Gubran attended an interview at the embassy "sometime before October 2015"—likely several years earlier[5]—but were denied visas based on their alleged use of khat,[6] a substance that is legal in Yemen, even though they had not actually used it. *See id.* ¶¶ 18–19, 21, 75.

A consular officer informed Hani and Gubran that they would need to complete periodic testing over three years to prove they were not using khat, and provided a list of doctors the embassy had approved for that purpose. *Id.* ¶ 75–76. Hani and Gubran chose the first doctor on the list, Dr. Abdulrahim El-Muayed, who conducted comprehensive testing at six-month intervals. *Id.* ¶¶ 78–82. Dr. El-Muayed completed all records from those examinations to submit directly to the embassy in a sealed envelope; Hani and Gubran never had access to those records. *Id.* ¶¶ 82–93. According to Plaintiffs, the process of the embassy selecting a panel of doctors to make such determinations, and the doctors communicating directly with consular officers without applicants' involvement, is required by State Department procedures, and all consular officers would have

---

[4] Because the allegations of a complaint are generally taken as true for the purpose of a motion under Rule 12(b)(6), this order summarizes Plaintiffs' allegations as if true. Nothing in this order should be construed as resolving any issue of fact that might be subject to dispute.

[5] As discussed below, Plaintiffs allege that a period of three years of testing with one doctor and one year of testing with another doctor, plus presumably some delay in scheduling multiple embassy interviews, fell between this interview and Gubran's March 2016 interview at the Cairo embassy. This interview therefore presumably occurred no later than early 2012. The 2015 date appears to refer to the closure of the Sana'a embassy. *See* FAC Ex. CCC (Rafiak Decl.) ¶ 8.

[6] The word "khat" can also be spelled "qat"; the spelling varies in the record of this case. In an argument that Plaintiffs' briefs on the present motions does not pursue, Plaintiffs assert that khat usage is legal in Yemen and not a valid reason for visa denial. *See* FAC ¶¶ 167–68. As Plaintiffs acknowledge in their complaint, however, the section of the Immigration and Nationality Act addressing substance abuse and addiction turns on whether a substance is listed in schedules to the U.S. Controlled Substances Act, not whether it is legal in an applicant's country of origin, *id.* ¶ 138, and Plaintiffs have not disputed that khat contains substances that meet that definition.

been aware of that process. *Id.* ¶¶ 138–57.

Hani and Gubran scheduled a new interview at the embassy after completing their three years of testing with Dr. El-Muayed. *Id.* ¶ 94. "Both Hani and Gubran provided updated information for themselves and their families, completed all necessary forms, and provided all required documentation." *Id.* ¶ 95. The consular officer informed them that Dr. El-Muayed was no longer certified by the embassy for khat remediation testing because he had "at some point" submitted fraudulent reports, and that Hani and Gubran would therefore need to "complete another round of khat remediation counseling with another Embassy certified doctor" over a period of one year. *Id.* ¶¶ 96–98. The officer provided a list of approved doctors, from which Hani and Gubran chose another doctor, Dr. Abbas Al-Almutawakil, who charged them far less than Dr. El-Muayed had and conducted somewhat less thorough testing, primarily counseling Hani and Gubran on the dangers of khat. *Id.* ¶¶ 99–104. As with Dr. El-Muayed, Dr. Al-Almutawakil completed all reports and provided them directly to the embassy in a sealed envelope, without Hani and Gubran having access to those reports. *See id.* ¶ 105.

After Hani and Gubran's year of testing with Dr. Al-Almutawakil, they were not able to return for another interview at the Sana'a embassy because it had closed due to unrest in Yemen. *Id.* ¶ 106. Their cases were transferred to the U.S. embassy in Cairo, Egypt. *Id.* Gubran and his wife and children attended an interview at the Cairo embassy on March 27, 2016, where "Gubran presented all necessary and required documentation," including "new required medical documents" that "established that he did not have any substance abuse issues or any other medical inadmissibility issues." *Id.* ¶¶ 107–10. The consular officer did not ask Gubran about his previous interviews or the previous khat testing requirements. *Id.* ¶ 109. The consular officer asked Gubran if he had been married more than once, and Gubran responded that he had been married twice but was only married to his current wife at the time. *Id.* ¶ 111.

The consular officer refused Gubran's visa application, providing a notice citing section 212(a)(6)(C) of the Immigration and Nationality Act ("INA")[7] with the statement

---

[7] That section is codified as 8 U.S.C. § 1182(a)(6)(C).

"Misrepresentation on [sic] material fact of medical status." *Id.* ¶ 112 & Ex. PP. The notice indicated that Gubran was eligible to apply for a waiver. *Id.* Ex. PP. In a declaration attached to the amended complaint, Gubran states that he "did not understand how [he] misrepresented [his] medical status when [he] only told the truth and all [his] medical reports were completed by doctors and submitted directly to the embassy in sealed documents." *Id.* Ex. CCCC (Gubran Decl.) ¶ 56. Plaintiffs assert that the determination could not have been made in good faith because any consular officer would have known that the remission testing reports were sent directly to the embassy by Drs. El-Muayed and Al-Almutawakil, and thus could not have constituted false representations by Gubran to a consular officer. *See, e.g.*, *id.* ¶¶ 158, 205, 209.

The embassy did not respond to multiple emails from Plaintiffs' previous attorney requesting clarification. FAC ¶¶ 113–14, 126.

Hani and his derivative beneficiaries attended an interview at the Cairo embassy on May 15, 2016, at which he "submitted all required documents which [he[8]] brought to the interview." *Id.* ¶ 115. The interview generally focused on Hani's relationship with his father Rafiak, and included no questions about khat testing, previous refusals, or previous medical documentation. *Id.* ¶ 118. At the end of the interview, the consular officer told Hani "congratulations" and asked him to wait, but when the consular officer returned, instead of granting the application, she gave Hani a form letter indicating that further information was required. *Id.* ¶¶ 119–21 & Ex. SS. The letter stated that Hani was required to submit information marked with an "X," but none of the form fields were so marked, and instead the words "Photo of Father" and "Waver I-601 USCIS.GOV" were handwritten at the bottom. *Id.* ¶ 121 & Ex. SS. The spaces for the date and the applicant's name were blank. *Id.* Ex. SS. The officer told Hani that he needed to provide a waiver and a photograph of his father reading that day's newspaper in the United States. *Id.* ¶ 122. The officer refused to tell Hani why he needed to submit a waiver and instead referred him to the USCIS website. *Id.* ¶ 123.

Hani and Gubran both applied for I-601 waivers on July 18, 2016, even though they

---

[8] This portion of the amended complaint alternates between using first-person and third-person pronouns to refer to Hani.

believed they were not required to do so.  *Id.* ¶ 127.

Nearly two years after Gubran's last interview, and while his I-601 waiver application was pending, a consular officer determined that he was also inadmissible under section 212(a)(10)(A),[9] based on intent to practice polygamy, as stated in a notice issued by the Cairo Embassy to Gubran on January 31, 2018.  *Id.* ¶¶ 132, 220.  Plaintiffs allege that determination to be clearly erroneous because although Gubran informed the consular officer that he had married for a second time, he had informally divorced his second wife (a divorce later formalized in Yemeni court) and reconciled with his first wife, State Department guidelines do not permit a finding of inadmissibility under section 212(a)(9)(A) based solely on past practice of polygamy, and the decision was made years after the interview and thus not based on current information.  *See id.* ¶¶ 218, 221–24; *see also id.* ¶¶ 174–79.  Plaintiffs assert that "Gubran's 212(a)(9)(A) in [sic] inextricably linked with the on-going concerted effort by both USCIS and the State Department to deny Gubran and Hani's."  *Id.* ¶ 225 (sic, sentence unfinished in original).

On March 20, 2018, USCIS sent Gubran a letter denying his request for a waiver.  *Id.* Ex. ZZZ.  The letter stated that the "Consulate has found [Gubran] inadmissible for willfully misrepresenting a material fact to procure a visa," with USCIS records indicating that Gubran "submitted falsified documentation as proof of remission to the Consulate in order to receive a visa."  *Id.*  The letter also stated that the "Consulate has found [Gubran] inadmissible for polygamy, for which there is no waiver," based on Gubran's statement to the consular officer that he had two wives.  *Id.*

Plaintiffs' operative first amended complaint does not address the status of Hani's I-601 waiver application, but Plaintiffs' proposed second amended complaint asserts that it was denied on May 8, 2018 in a letter stating that Hani "made a material misrepresentation to gain a benefit under the INA" by "submitt[ing] falsified medical documents to the consulate" and that his visa application had been denied based on inadmissibility under section 212(a)(6)(C)(i).  Proposed 2d

---

[9] That section is codified as 8 U.S.C. § 1182(a)(10)(A).  The amended complaint at times erroneously cites section 212(a)(9)(A) instead of 212(a)(10)(A), but the intent to address subsection (a)(10)(A) is clear in context.  Subsection (a)(9)(A) refers to aliens previously ordered removed.

United States District Court
Northern District of California

Am. Compl. ("PSAC," dkt. 47-3) ¶ 135.

Hani and Gubran's visa applications are both currently listed as "refused" on the State Department's website. FAC ¶ 137 & Exs. GGG, HHH.

Plaintiffs allege that fraud and abuse at the now-closed Sana'a embassy is well documented, including schemes in which embassy staff received kickbacks from doctors for testing, a staff member issued sham visas, and passports were improperly seized from U.S. citizens. *Id.* ¶¶ 180–86.

Plaintiffs assert the following somewhat overlapping claims: (1) that consular officers determined in bad faith that Hani and Gubran made material representations, because the medical documents at issue were and could only have been submitted by the doctors who tested them, *id.* ¶¶ 203–16; (2) that consular officers determined in bad faith that Gubran was inadmissible for intent to practice polygamy, because that determination was made years after his interview and there was insufficient evidence to support it, *id.* ¶¶ 217–26; (3) that the determinations of material misrepresentations were not facially valid and bona fide, as would be necessary for the doctrine of consular non-reviewability to apply, because the statute lacks a requirement for discreet factual findings, the consular officers could not in good faith have believed Hani and Gubran were inadmissible on this basis, and the consular officers did not consider evidence of actual innocence, *id.* ¶¶ 227–31; (4) violation of Rafiak's Fifth Amendment substantive due process liberty interests, *id.* ¶¶ 232–41; and (5) violation of Rafiak's Fifth Amendment procedural due process rights, *id.* ¶¶ 242–51.

Plaintiffs seek injunctive and declaratory relief to require Defendants to revoke the refusal of Plaintiffs' visa applications, declare that Hani and Gubran are not inadmissible under the statutes cited, and mandate a proper review of Plaintiffs' applications. *Id.* at 47–48 (prayer for relief). Plaintiffs also seek attorneys' fees and costs, but do not seek damages. *See id.*

Plaintiffs' present motion for leave to amend seeks to add a claim under the APA against defendants related to the Department of Homeland Security, asserting that USCIS (an agency of the Department of Homeland Security) improperly found Plaintiffs inadmissible in its review of Hani and Gubran's waiver applications, and that such determinations are subject to judicial

review.  *See* PSAC ¶¶ 254–65.

## C.    Declaration of Maria Rosales

Defendants filed with their motion to dismiss a declaration of Maria Rosales (an attorney advisor at the State Department) based on her review of State Department records, which is substantially similar to an earlier declaration by Rosales that Defendants submitted with their previous motion.  *See generally* 3d Rosales Decl. (dkt. 42-1)[10]; *cf.* 1st Rosales Decl. (dkt. 18-1). According to Rosales, State Department records indicate that Hani and Gubran appeared for interviews at the Sana'a embassy and applied for immigrant visas in April of 2008, but a consular officer refused their applications under section 212(a)(1)(A)(iv) of the INA based on substance-related disorders.  3d Rosales Decl. ¶¶ 6–7.  Rosales states that Hani and Gubran again appeared for consular interviews in 2012, but their applications were refused under the same section for substance disorders, and also under section 212(a)(6)(C)(i) based on material misrepresentations. *Id.* ¶¶ 8–9.  Rosales states that a consular officer determined that Hani and Gubran had successfully complete khat remission and scheduled a new interview in 2014, but again refused their applications under section 212(a)(6)(C)(i) based on material misrepresentations.  *Id.* ¶ 10. According to Rosales, records indicate that a consular officer refused Hani's wife's visa application in May of 2016 because it was derivative of Hani's application and he had not established eligibility, and consular officers refused Gubran's application in March of 2016 under section 212(a)(6)(C)(i) based on material misrepresentations and again in January of 2018 under section 212(a)(10)(A) because the officer determined that Gubran practiced polygamy.  *Id.* ¶¶ 11–14.

The Court previously expressed skepticism as to taking judicial notice of Rosales's first declaration purporting to summarize documents not in the record, but noted that Plaintiffs had not objected to taking notice of it, and that its contents did not affect the outcome of the prior motions. Jan. Order at 4.  Plaintiffs now object to taking judicial notice of Rosales's declaration.  Opp'n to MTD (dkt. 46) at 13–16.  The Court addresses its relevance and propriety in the context of the

---

[10] Defendants also submitted a declaration by Rosales in opposition to Plaintiffs' first motion for leave to amend.  *See* 2d Rosales Decl. (dkt. 28-1).

United States District Court
Northern District of California

analysis below.

## III.   ANALYSIS

### A.   Legal Standard for Amendment Under Rule 15(a)(2)

In general, when a party seeks to amend a pleading more than twenty-one days after serving it, or more than twenty-one days after service of a responsive pleading or motion, the party must obtain either the opposing party's consent or leave of the court. Fed. R. Civ. P. 15(a). The Federal Rules of Civil Procedure provide that "courts should freely give leave when justice so requires." *Id.* "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alteration in original). Of those factors, "prejudice to the opposing party carries the most weight." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). "Requests for leave to amend should be granted with 'extreme liberality.'" *Id.* (citation omitted).

### B.   Legal Standard for Dismissal Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain

United States District Court
Northern District of California

either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

## C.  Judicial Review of Consular Decisions Denying Visas

Courts have "have long recognized that 'ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review' . . . based on 'the recognition that the power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government.'" *Allen v. Milas,* 896 F.3d 1094, 1104 (9th Cir. 2018) (citations omitted). In *Kleindienst v. Mandel*, 408 U.S. 753 (1972), the Supreme Court "recognized a narrow exception for review of constitutional claims," but "[t]he exception itself is quite narrow, requiring deference to the consular officer's decision so long as 'that reason was facially legitimate and bona fide.'" *Allen*, 896 F.3d at 1105 (quoting *Mandel*, 408 U.S. at 769). If the consular officer presents a facially legitimate and bona fide reason for denial, "the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional interests at issue. *Mandel*, 408 U.S. at 770. To trigger even that deferential standard of review, "the denial of a visa [must] implicate[] the constitutional rights of American citizens." *See Cardenas v. United States*, 826 F.3d 1164, 1169 (9th Cir. 2016) (citation and internal quotation marks omitted).

Several decisions by the Supreme Court and courts of appeals have addressed the scope of

that exception.  In *Kerry v. Din*, Justice Kennedy's controlling opinion held that where a statute

cited by the consular officer "specifies discrete factual predicates the consular officer must find to

exist before denying a visa," rather than granting "nearly unbridled discretion," a plaintiff can

obtain review only through "an affirmative showing of bad faith on the part of the consular

officer," which the plaintiff in that case failed to show.  *Kerry v. Din*, 576 U.S. 86, 105 (2015)

(Kennedy, J.)[11]; *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018) ("In *Din*, Justice

KENNEDY reiterated that 'respect for the political branches' broad power over the creation and

administration of the immigration system' meant that the Government need provide only a

statutory citation to explain a visa denial.").

In *Cardenas*, the Ninth Circuit entertained a claim by the wife of an applicant whose visa

was rejected on account of purported gang membership, but affirmed dismissal because the

consular officer gave a facially legitimate reason by citing a statute prohibiting entry with intent to

engage in unlawful activity and identifying the applicant's purported connection to a criminal

gang as the basis for that decision.  *See* 826 F.3d at 1172–73.  The court construed *Din* as

endorsing a two-part test: "First, the consular officer must deny the visa under a valid statute of

inadmissibility. . . . Second, the consular officer must cite an admissibility statute that 'specifies

discrete factual predicates the consular officer must find to exist before denying a visa,' or there

must be a fact in the record that 'provides at least a facial connection to' the statutory ground of

inadmissibility."  *Id.* at 1172 (quoting *Din*, 56 U.S. at 105).  The *Cardenas* court also held that the

plaintiff failed to present allegations raising a plausible inference of bad faith.  *Id.* at 1172–73.

The Ninth Circuit's pre-*Din* decision in *Bustamante v. Mukasey* suggested that bad faith

could be established by allegations "that the consular official did not in good faith believe the

---

[11] No opinion in *Din* attracted support from a majority of the Court.  The parties here agree that
Justice Kennedy's opinion controls, and the Ninth Circuit has so held.  *See Allen*, 896 F.3d at 1108
("But Justice Kennedy, joined by Justice Alito, concurred in the judgment alone, in the narrowest
and thus controlling opinion in that case."); *Cardenas*, 826 F3d at 1167. ("Justice Kennedy's
concurrence in *Din* is the controlling opinion.").  All citations herein to that case therefore refer to
Justice Kennedy's opinion, without further parentheticals.  Justice Scalia's opinion for a plurality
of the majority—which is sometimes described as the plurality opinion, although the dissent
garnered more votes—would have held that a citizen lacks a cognizable interest in their spouse's
visa application.

information he had," but not merely by alleging "that the consular official's information was incorrect." *Bustamante*, 531 F.3d 1059, 1062–63 (9th Cir. 2008).  The Seventh Circuit has suggested that a consular officer's decision might fail the "facially legitimate and bona fide reason" test if "if the consular official had concluded that the [evidence of ineligibility was] false, or if [the plaintiff] had presented strong evidence of innocence that the consular officer refused to consider"—facts not present in the case before that court.  *Morfin v. Tillerson*, 851 F.3d 710, 713–14 (7th Cir. 2017).  A more recent Seventh Circuit decision held that "[m]aking an 'affirmative showing of bad faith' requires a plaintiff to point to something more than an unfavorable decision."  *Yafai v. Pompeo*, 912 F.3d 1018, 1022 (7th Cir. 2019).

While the doctrine of consular nonreviewability significantly limits the circumstances in which a court may reverse a decision by the executive branch to deny a visa, it is not a limitation on the courts' subject matter jurisdiction.  *Allen*, 896 F.3d at 1102.

### D.    The Court Assumes Rafiak's Interest Is Cognizable

The first step in the *Mandel* analysis is whether a U.S. citizen has a constitutional right implicated by the decision.  *See Cardenas*, 826 F.3d at 1169.  As discussed in this Court's previous order, the Ninth Circuit's *Bustamante* decision—recognizing a citizen's liberty interest in their spouse's visa application—remains controlling precedent.  Jan. Order at 13.

Plaintiffs cite no authority extending that holding to the relationship between a U.S. citizen parent and that citizen's adult children.  Defendants cite a handful of district court decisions declining to extend *Bustamante* to non-spousal relationships.  MTD at 16–17.  The Court previously found one of those decisions, *Santos v. Lynch*, unpersuasive for relying on Justice Scalia's opinion in *Din*—which conflicts with *Bustamante*—rather than Justice Kennedy's opinion, which the Ninth Circuit has held controls.  Jan. Order at 12–13 (discussing *Santos v. Lynch*, No. 1:15-CV-00979-SAB, 2016 WL 3549366 (E.D. Cal. June 29, 2016)).  The only other case Defendants cite addressing parent-child relationships acknowledged the continuing validity of *Bustamante* based on the Ninth Circuit's recognition of Justice Kennedy's opinion as controlling in *Din*, but nevertheless relied on *Santos* and on Justice Scalia's contrary opinion in *Din* to hold that a parent-child relationship did not confer a sufficient interest.  *L.H. v. Kerry*, No. CV 14-

06212 SVW, 2017 WL 11589250, at *2–3 (C.D. Cal. Jan. 26, 2017). *L.H.* also concerned the denial of a nonimmigrant visa for family members to "temporarily visit," which might implicate somewhat lesser interests than where, as here, family members seek permanent reunification through an immigrant visa. *Id.* at *3. There may be persuasive reasons to hold that a parent's relationship with an adult child does not carry the same weight as a spousal relationship, but the Court is not prepared to so rule on the present motion based on Defendants' cursory briefing of the issue. *See* MTD at 16–17; Reply re MTD (dkt. 51) at 3 n.3.

Regardless, because there are separate and sufficient grounds for dismissal and denial of leave to amend as discussed below, the Court need not decide whether Rafiak has a cognizable interest in his sons' visa applications, or the derivative applications of other family members. The Court assumes for the sake of argument that he does.[12]

### E. The Doctrine of Consular Nonreviewability Applies

Under the *Cardenas* court's interpretation of *Din*, the first element of the test for whether a visa denial is nonreviewable (if the threshold condition of a citizen's cognizable interest is satisfied) is that a consular officer "must deny the visa under a valid statute of inadmissibility," and the second element is that the officer must *either* "cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' *or* there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." *Cardenas*, 826 F.3d at 1172 (emphasis added; citation omitted). While Justice Kennedy relied in part on concerns regarding "the area of national security," *Din*, 576 U.S. at 104, the Ninth Circuit has not limited *Din*'s holding to that context. *See Cardenas*, 826 F.3d at 1172 (including no such limitation, and applying the test where an application was denied based on

---

[12] Even if Rafiak has a sufficient interest, he is likely the only plaintiff with such an interest, and the claims of all other plaintiffs are likely subject to dismissal on that basis. *See Chehade v. Tillerson*, 712 F. App'x 598, 599–600 (9th Cir. 2017) (holding that "an unadmitted and nonresident alien, has no constitutional right of entry and no cause of action for judicial review of her visa application's denial," assuming without deciding that the applicant's U.S. citizen daughter had such an interest, and affirming dismissal of the daughter's claim based on the government having "provided a facially legitimate and bona fide reason for the visa application's denial"). But the parties have not briefed that issue in detail, and the Court need not reach it in light of the separate grounds for dismissal addressed below.

13

1    perceived intent to engage in "unlawful activity").

2       As to the first element, Plaintiffs' allegations and the attachments to their complaint make

3 clear that Gubran's application was denied pursuant to sections 212(a)(6)(C)(i) and 212(a)(10)(A)

4 of the INA. Both of those statutes are, at least in the abstract, facially valid reasons for denying a

5 visa application.

6       The fate of Hani's application is not quite so clear from Plaintiffs' first amended complaint

7 does not allege that Hani ever received notice stating why his application was denied. In their

8 proposed second amended complaint, Plaintiffs state that USCIS's denial of Hani's waiver

9 indicated that his visa application was denied under section 212(a)(6)(C)(i) based on a material

10 misrepresentation. PSAC ¶ 135. The actual denial letter from USCIS does not state on its face,

11 however, that a consular officer made that determination in denying Hani's visa application, as

12 opposed to perhaps USCIS determining inadmissibility itself in denying a request for a waiver,

13 leaving at least a logical possibility that the State Department consular officer based their decision

14 to refuse the visa application on some other undisclosed rationale. *See* Mot. for Leave (dkt. 47)

15 Ex. C.[13] But Plaintiffs' amended complaint alleges that Defendants refused both Hani and

16 Gubran's visas under section 212(a)(6)(C)(i), FAC ¶ 5, and both of Rosales's declarations in

17 support of dismissal state that Hani's application was refused under that subsection of the statute

18 by a consular officer (after initially being refused under section 212(a)(1)(A)(iv) for a substance-

19 related disorder). 1st Rosales Decl. ¶¶ 7, 9, 10; 3d Rosales Decl. ¶¶ 10.

20       The Court remains skeptical that all of the details of Rosales's declarations warrant judicial

21 notice. As Defendants correctly note, the Ninth Circuit has approved of a district court

22 considering on a motion under Rule 12(b)(6) a declaration referencing a government agency's

23 handbook based on the fact that the handbook fell within the category of "[r]ecords and reports of

24

25 [13] "Our records reveal that you made a material misrepresentation to gain a benefit under the INA.
Specifically, you submitted falsified medical documents to the consulate. An individual is
26 inadmissible who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has
sought to procure or has procured) a visa, other documentation, or admission into the United
27 States or other benefit provided under the INA. *See* INA § 212(a)(6)(C)(i). You have willfully
misrepresented a material fact to gain a benefit under the INA. Therefore, you are inadmissible to
28 the United States." Mot. for Leave Ex. C (paragraph breaks omitted).

administrative bodies" that "clearly" fall within permissible judicial notice. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). It is not clear from that case, though, whether any party disputed the authenticity of the description of the handbook, or whether the handbook was publicly available such that its contents could "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" under the basic test for judicial notice under Rule 201. *See* Fed. R. Evid. 201(b)(2). Here, no source is apparent from which either the Court or Plaintiffs could readily determine the contents of the internal State Department records Rosales purports to summarize. Plaintiffs contend that errors can be and have been made in this sort of review and summary of internal databases. Opp'n to MTD at 14–16. Nor is either Rosales's declaration or the internal database on which she relies (to which Plaintiffs have no access) incorporated by reference by Plaintiffs' complaint.

As to one issue, however, the Court is satisfied that Rosales's declaration is itself a public record subject to judicial notice. Under *Din*, "the Government satisfie[s] any obligation it might have . . . to provide [a citizen relative of a foreign visa applicant] with a facially legitimate and bona fide reason for its action when it provide[s] notice that [the applicant] was denied admission to the country under [a particular statutory provision]." *Din*, 576 U.S. at 106; *see also Hawaii*, 138 S. Ct. at 2419 (describing Justice Kennedy's opinion in *Din* as holding "that the Government need provide only a statutory citation to explain a visa denial"). Even if Defendants failed to provide Plaintiffs notice of the basis for denying Hani's application at the time it was denied, Rosales's declarations are themselves statements by a State Department official providing notice as to the statutory basis for denial—specifically, that Hani's application was refused in 2008 under section 212(a)(1)(A)(iv) based on a substance disorder, again under that subsection and also under section 212(a)(6)(C)(i) based on a material misrepresentation in 2012, and again under section 212(a)(6)(C)(i) in 2014. The Court is aware of no authority requiring the person providing such notice to be the particular consular officer who made the decision. Accordingly, if the only defect at issue were failure to provide notice of a basis for denial, that defect has now been cured, and Plaintiffs are not entitled to the purely prospective relief they seek to remedy it. Both Plaintiffs' own allegation of the specific statutory basis for denial of Hani's visa application and Rosales's

15

1    declarations show that Plaintiffs have, at least at this point, received the basic degree of notice to

2    which they may have been entitled under *Din*.

3        Having determined that consular officers refused Gubran's application under sections

4    212(a)(6)(C)(i) and 212(a)(10)(A) and Hani's application under section 212(a)(6)(C)(i),[14] which

5    are valid statutes of inadmissibility, the Court turns to the second element: whether those statutes

6    specify "discrete factual predicates the consular officer must find to exist before denying a visa,"

7    or in the alternative, whether facts in the record are at least facially connected to the statutory basis

8    for inadmissibility. *Cardenas*, 826 F.3d at 1172.

9        In *Din*, Justice Kennedy held that "[t]he provisions of § 1182(a)(3)(B) establish

10   [sufficiently] specific criteria for determining terrorism-related inadmissibility." 576 U.S. at 104.

11   That statute includes a number of different activities that can render an applicant inadmissible,

12   including, for example, having "engaged in a terrorist activity," "endors[ing] or espous[ing]

13   terrorist activity or persuad[ing] others to endorse or espouse terrorist activity or support a terrorist

14   organization," or being a member of terrorist organizations meeting a statutory definition. *See*

15   8 U.S.C. § 1182(a)(3)(B).

16       The statutory sections at issue here have similarly discrete factual predications. Plaintiffs

17   themselves assert in their amended complaint that section 212(a)(6)(C)(i) requires a consular

18   officer to establish the following elements before finding an applicant inadmissible (with some of

19   these elements having even more discrete sub-criteria): "1) misrepresentation or concealment of

20   some fact; 2) the misrepresentation was willful; 3) the fact was material; and 4) the

21   misrepresentation was made to seek or procure admission or another benefit under the INA." FAC

22   ¶ 161 (citing *Kungys v. United States*, 485 U.S. 759 (1988)); *see* 8 U.S.C. § 1182(a)(6)(C)(i)

23   ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has

24   sought to procure or has procured) a visa, other documentation, or admission into the United

25   States or other benefit provided under this chapter is inadmissible."). Under section 212(a)(10)(A)

26

27   _____

28   [14] Rosales states that both application were initially refused under section 212(a)(1)(A)(iv) for
     substance disorders in 2008 and 2012, but since both sides' briefs focus on the later denials, the
     Court does as well. The same analysis would seem to apply to the earlier denials.

of the INA, "[a]ny immigrant who is coming to the United States to practice polygamy is inadmissible," 8 U.S.C. § 1182(a)(10)(A), and as Plaintiffs themselves assert in their amended complaint, the State Department has interpreted that statute as requiring a consular officer to find specifically that the applicant intends to maintain marital relationships with multiple spouses after immigrating to the United States, which can be satisfied by a long-distance relationship with a left-behind spouse. FAC ¶¶ 172–79.

The Court is satisfied that both of those statutes require sufficiently discrete factual predicates to be entitled to deference under *Din* and *Cardenas*. Plaintiffs cite no authority to the contrary.

### F.    Plaintiffs Have Not Plausibly Alleged Bad Faith

If the government establishes the two elements above for the doctrine of consular nonreviewability—citation of a valid statute, which either requires a discrete factual predicate or has some facial connection to the factual record—a plaintiff may rebut the presumption that the consular officer's reason was bona fide only by plausibly alleging that the officer acted in bad faith, or in other words, "that the consular official did not in good faith believe the information he had." *See Bustamante*, 531 F.3d at 1062. This inquiry is circumscribed by the rule that a mere citation to a statutory provision of inadmissibility can be sufficient, and that courts will not "look behind" the assertion that such a statute applies. *See Din*, 576 U.S. at 105. The result places many plaintiffs "in a 'nearly impossible' position," because there is often no way to "conclude that the consular officer could not have believed [their stated conclusion] when the Court does not know all of the information upon which the consular officer relied," which can include many sources of information beyond a plaintiff's own application. *Santos Vicente v. Barr*, No. 20-cv-06211-CRB, slip op. at 11 (N.D. Cal. Feb. 12, 2021) (emphasis and citation omitted).

Plaintiffs here primarily argue that no consular officer could have believed in good faith that Hani and Gubran falsified their medical documents related to khat remediation testing because, pursuant to State Department protocol, those documents were submitted directly by the testing doctors to the embassy, not by Hani and Gubran. With respect to Hani's application, however, there is nothing before the Court to indicate that the decision was based on a material

misrepresentation specifically in the documents submitted by Drs. El-Muayed and Al-Almutawakil.  Plaintiffs' amended complaint is silent as to what representation by Hani the consulate believed was false.  The May 2018 letter from USCIS denying Hani's request for a waiver, submitted as an exhibit to Plaintiffs' motion for leave to amend, provides some clue in that it asserts Hani "submitted falsified medical documents to the consulate," Mot. for Leave Ex. C, but Plaintiffs allege that Hani himself submitted documents to the consulate on multiple occasions, separate from the documents provided by the testing doctors.  *See* FAC ¶¶ 95, 116.  It is conceivable that the consular officer believed Hani falsified those other documents.

For Gubran's application, the letter from USCIS denying him a waiver is somewhat more specific, stating that the consulate found him inadmissible because he "submitted falsified documentation *as proof of remission* to the Consulate."  FAC Ex. ZZZ (emphasis added).  But by Plaintiffs' own allegations, the materials submitted by Drs. El-Muayed and Al-Almutawakil were not the only materials offered to show Gubran's remission.  Plaintiffs allege that at his March 2016 interview in Cairo, Gubran submitted "all necessary and required documentation," including "new required medical documents [which] established that he did not have any substance abuse issues."  FAC ¶¶ 108, 110.  The consular officer might have determined that *those* documents, as opposed to anything submitted directly by one of the doctors, were falsified.[15]

Other than the denials under section 212(a)(6)(C)(i) themselves, nothing before the Court indicates that the consular officers in fact based their decisions on any representation or submission by Hani or Gubran (as opposed to submissions from the testing doctors), or that the consular officers had any reason to believe such representations were false.  But under *Din* and *Cardenas*, the denials, accompanied by a statutory citation, are enough.  The Court cannot "look behind" these stated reasons for denial to require supporting evidence, and because Plaintiffs are not privy to all of the information on which the consular officers might have relied, allegations of

---

[15] While not addressed by the parties, it also seems conceivable that a consular officer could have believed that Hani and Gubran colluded with one of the testing doctors to cause the submission of falsified documents, in violation of State Department protocols requiring the doctors to submit their reports without applicants' involvement.  Such circumstances could satisfy section 212(a)(6)(C)(i)'s elements of a false representation by the applicant to the consulate.

1    a mere absence of evidence are not sufficient to render plausible an allegation of bad faith.  *See*

2    *Din*, 576 U.S. at 105–06.

3         Plaintiffs' allegations of a background of corruption at the Sana'a embassy are also

4    insufficient.  While it is possible that, as Plaintiffs suggest, the initial course of testing with Dr. El-

5    Muayed involved a kickback scheme with embassy personnel, Plaintiffs have not plausibly

6    explained how the later decisions to deny their applications based on material misrepresentations

7    were part of that scheme.  Allegations that Sana'a embassy staff issued sham visas and improperly

8    confiscated passports are further removed from the facts at issue.  Whatever corruption may have

9    taken place at the embassy, Plaintiffs have not plausibly alleged that the particular consular

10   officers who denied their applications did not in fact believe that Hani and Gubran made material

11   misrepresentations sufficient to render them inadmissible—particularly with respect to Gubran's

12   2016 denial at a separate embassy in Cairo.

13        The inquiry as to Gubran's denial under section 212(a)(10)(A) is if anything more

14   straightforward.  Plaintiffs assert that the consular officer could not have actually believed that

15   Gubran intended to practice polygamy in the United States because his second marriage had ended

16   at the time of his 2016 interview in Cairo.  In effect, Plaintiffs ask the Court to hold that the

17   consular officer was required to credit Gubran's explanation of his marital status.  But based on

18   the denial under section 212(a)(10)(A), which requires intent to practice polygamy after

19   immigration, the consular officer apparently did not believe Gubran's explanation.  Under the

20   extremely deferential standard of consular nonreviewability, the Court cannot look behind that

21   decision to determine whether it was correct, or even whether it was reasonable.  Neither the Court

22   nor Plaintiffs know what other evidence the consular officer might have considered in concluding

23   that Gubran intended to practice polygamy in the United States.  Even if the consular officer

24   merely believed—and taking Plaintiffs' allegations as true, believed wrongly—that Gubran was

25   not telling the truth based on his demeanor in the interview, this Court lacks authority to second

26   guess that determination.  Requiring Defendants to identify evidence of Gubran's intent beyond a

27   mere citation to section 212(a)(10)(A) to rebut an inference of bad faith would contradict the rule

28   of *Din* and *Cardenas* that such a citation is sufficient, and the Supreme Court and Ninth Circuit's

1    holdings that the plaintiffs in those cases did not plausibly allege bad faith.[16]

2         Plaintiffs assert that the long delay in the determination that Gubran was inadmissible

3    under section 212(a)(10)(A) indicates that it was part of a concerted effort to deny Hani and

4    Gubran visas.  *See* FAC ¶¶ 220–25.[17]  There are any number of reasons why the consular officer

5    might have updated their decision later.  Even if, as Plaintiffs suggest, the decision was prompted

6    by USCIS's then-pending review of Gubran's waiver application, that does not indicate bad faith.

7    Conceivably, a USCIS official might have asked a consular officer whether Gubran's statement

8    about multiple marriages—or some other evidence in the record—implicated section

9    212(a)(10)(A), and the consular officer might have either realized that a determination of

10   inadmissibility on that basis had been inadvertently omitted from the decision, or determined at

11   that time and in good faith (even if incorrectly) that Gubran intended to practice polygamy.

12   Again, nothing before the Court indicates whether that was the case, but the mere delay does not

13   give the Court license to look behind the consular officer's citation of a facially valid statute of

14   inadmissibility.  *Cf. Baluch v. Sullivan*, 719 F. App'x 725, 726 (9th Cir. 2018) ("Neither does the

15   timing of the consular officer's decision on Azam's visa suggest an improper reason for the

16   ultimate decision.").

17        Here, as in many cases implicating the doctrine of consular nonreviewability, the burden of

18   showing bad faith is "nearly impossible" to meet.  *Santos Vicente*, slip op. at 11.  Plaintiffs'

19   inability to "plausibly allege[] with sufficient particularity" bad faith by a consular officer, *see*

20   *Din*, 576 U.S. at 105, is understandable in light of Plaintiffs' limited access to the basis for the

21   consular officers' decisions.  Under binding precedent, however, Plaintiffs have not met their

22

23   [16] Gubran's formal divorce *after* the decision finding him inadmissible under section
     212(a)(10)(A) "obviously cannot raise a plausible inference that the officer acted in bad faith in
24   making the original decision."  *See Cardenas*, 826 F.3d at 1172.  While not addressed in the
     parties' briefs, defense counsel acknowledged at the hearing that Gubran could file a new
25   application with that additional evidence.  *Cf. id.* at 1172 n.7 ("In any event, as the government
     noted at argument, the visa denial is without prejudice to future applications.  If Mora has new
26   information, he can submit a new visa application.").  Of course, merely establishing that he does
     not intend to practice polygamy would not render Gubran eligible for a visa unless he can also
27   either convince the consulate that he did not make a material misrepresentation or obtain a waiver
     of that basis for inadmissibility from USCIS.
28   [17] Paragraph 225 of the amended complaint is unfinished, and leaves out exactly what "concerted
     effort" is at issue, but its intent to assert an effort to deny the visa applications is clear in context.

burden to proceed on this narrow exception to the doctrine. Defendants' motion to dismiss is therefore GRANTED.

### G. Leave to Amend Would Be Futile

Plaintiffs seek leave to amend to assert an APA claim based on new allegations that USCIS, rather than the State Department, found them inadmissible. *See generally* Mot. for Leave.[18] Plaintiffs cite the Ninth Circuit's decisions in *Mamigonian v. Biggs*, 710 F.3d 936 (9th Cir. 2013), and *Cervantes-Gonzales v. INS,* 244 F.3d 1001 (9th Cir. 2001), among others, for the proposition that USCIS determinations of inadmissibility are reviewable under the APA.

Somewhat paradoxically, Plaintiffs rely on the fact that waivers under 8 U.S.C. § 1182(i) of inadmissibility for willful misrepresentation are among the determinations listed in 8 U.S.C. § 1252(a)(2)(B), which by its terms strips the courts of jurisdiction to review those determinations. Plaintiffs note that the Ninth Circuit has interpreted that statute as only barring jurisdiction as to discretionary decisions, and not disturbing preexisting precedent allowing for review of nondiscretionary decisions. Mot. for Leave at 2–3 (citing *Mamigonian*, 710 F.3d at 946).

Plaintiffs' jurisdictional argument misses the point. The doctrine of consular nonreviewability is not a limitation on jurisdiction. *Allen*, 896 F.3d at 1102. The fact that § 1252(a)(2)(B) does not bar jurisdiction to consider claims related to discretionary determinations for waivers under § 1182(i) does not preclude the application of consular nonreviewability.

Nor would the context of an inadmissibility determination by USCIS in the context of a waiver application, rather than by a consular officer in the context of a visa application, take this case out of the scope of that doctrine. The parties dispute whether Plaintiffs can plausibly allege that USCIS (rather than the consulate) found Hani and Gubran ineligible, but even assuming Plaintiffs are correct on that issue, it does not alter the outcome. Despite its common name, the doctrine of consular nonreviewability is based on deference to Congress and the Executive Branch, not on any special status of consular officers in particular. *Din* characterized *Mandel*, the

---

[18] Plaintiffs make clear in their reply that they do not base their claim on USCIS's decisions to deny waivers, but instead on its purported conclusions that Hani and Gubran were ineligible to begin with.

seminal case establishing narrow exceptions to consular nonreviewability, as "based upon due consideration of the congressional power to make rules for the exclusion of aliens, and the ensuing power to delegate authority to the Attorney General to exercise substantial discretion in that field," and noted that it applied to "an executive officer's decision denying a visa." *Din*, 576 U.S. at 103–04. *Mandel* involved a decision by the Attorney General (acting through the Immigration and Naturalization Service, a predecessor of USCIS) to deny a waiver, not a decision by a consular officer to deny a visa. *Mandel*, 408 U.S. at 759. The Attorney General in fact rejected a recommendation by the Department of State that a waiver should be granted. *Id.*

The cases on which Plaintiffs rely for review under the APA of waiver decisions do not involve waivers in the context of visa applications. In *Mamigonian*, the plaintiff had already been issued a visa, sought adjustment of status to lawful permanent residence but was denied based on previous misrepresentations of citizenship, and raised her claim in the context of habeas petition after she was taken into custody as a result of removal proceedings. *Mamigonian*, 710 F.3d at 938–39. In *Cervantes-Gonzales*, the plaintiff was similarly approved for a visa and raised his claims in the context of seeking a waiver for adjustment of status during deportation proceedings. *Cervantes-Gonzales*, 244 F.3d at 1003. *See also, e.g.*, *Qubadi v. Hazuda*, No. CV 14-06310 MMM (PJWx), 2015 WL 10939542 (C.D. Cal. Aug. 10, 2015) (application for adjustment of status); *Mann v. Holder*, No. 1:12-CV-1926 AWI BAM, 2014 WL 4795032, at *1 (E.D. Cal. Sept. 25, 2014) (same).[19]

One case actually involving a visa application held only that the plaintiffs were entitled to leave to amend to assert an unusual theory that upon determining that a visa applicant was inadmissible, the consulate should have made a recommendation to DHS to reconsider its previous decision to grant the sponsor's I-130 petition rather than deny the visa application. *Al Khader v. Blinken*, No. 18-cv-1355, 2021 WL 678701 (N.D. Ill. Feb. 22, 2021). The court did not hold that such a theory was actually viable, and Plaintiffs have not asserted such a theory here. Plaintiffs'

---

[19] *Jouzine v. Gonzales*, 184 F. App'x 669 (9th Cir. 2006), on which Plaintiffs also rely, cannot be cited to this Court because it is an unpublished decision of the Ninth Circuit from before 2007. *See* Civ. L.R. 3-4(e); 9th Cir. Rule 36-3(c). Regardless, it too involved an adjustment of status application and deportation proceedings

counsel conceded at the hearing that Plaintiffs are not aware of any case permitting review of a USCIS inadmissibility decision in the context of a waiver application related to a visa denial, rather than adjustment of status or some other context.  To whatever extent that *Al Khader* or any of the non-precedential cases cited in Plaintiffs' briefs could perhaps be read as suggesting that a court can conduct such review under the APA without regard for the doctrine of consular nonreviewability, this Court disagrees, as that outcome would conflict with—or at least substantially undermine—binding precedent of the Supreme Court and Ninth Circuit.

Although Plaintiffs now wish to challenge a determination they claim USCIS made in the context of their waiver applications, rather than a determination by the consulate for their visa applications, the waivers they sought were in the context of seeking visas to enter the United States.  The context is therefore indistinguishable from *Mandel*, and the doctrine of consular nonreviewability applies.  As discussed above in the context of Defendants' motion to dismiss, Plaintiffs have not met their heavy burden to establish an exception to that doctrine.  Nothing in the proposed second amended complaint alters that conclusion.  Plaintiffs' motion for leave to amend is therefore DENIED as futile.[20]

## IV.    CONCLUSION

The Court recognizes that the denial of Plaintiffs' visas has had a profound effect on Plaintiffs' family.  If Plaintiffs' factual allegations are taken as true, and the denials were based on incorrect conclusions by consular officers, an injustice has been done.  Under clear precedent, however, such determinations are entrusted to the Executive Branch, with only extremely narrow avenues for judicial review.  Plaintiffs have not met their heavy burden to show that such an exception applies.

For the reasons discussed above, Defendants' motion to dismiss is GRANTED, and Plaintiffs' motion for leave to file a second amended complaint is DENIED.  Plaintiffs have now

---

[20] Contrary to an argument in Plaintiffs' reply brief, this case does not concern pure issues of law as applied to undisputed facts.  Reply re Leave to Amend at 3 (citing *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020)).  Defendants determined that Hani and Gubran made material misrepresentations and that Gubran intended to practice polygamy in the United States.  Plaintiffs assert that Defendants lacked a sufficient basis for those determinations.  This is precisely the sort of largely factual dispute generally governed by the doctrine of consular nonreviewability.

had multiple opportunities to propose amendments, and have not shown that they could meet their formidable burden to overcome the doctrine of consular nonreviewability. The Court therefore determines that further leave to amend would be futile, and DISMISSES the case with prejudice. The Clerk shall enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED.**

Dated: June 21, 2021

JOSEPH C. SPERO
Chief Magistrate Judge